UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------x
CAROL A. DAVIS,

                      Plaintiff,                    Memorandum & Order
                                                                    09-CV-2761 (SMG)
     -against-

CHRISTOPHER OGANDO and
CLODOMIRO OGANDO,

                      Defendants.
------------------------------------------------------x
*Gold, S., United States Magistrate Judge*:

## INTRODUCTION

Plaintiff, Carol Davis, brings this action seeking to recover for personal injuries she claims she sustained as a result of a car accident with Defendants, Christopher and Clodomiro Ogando, on September 22, 2007. Defendants have moved for summary judgment on the grounds that Plaintiff did not sustain a serious injury. For the reasons stated below, Defendants' motion is granted.

## FACTUAL BACKGROUND

The following facts are drawn primarily from Defendants' statement of facts submitted, as required by Local Civil Rule 56.1(a), with their summary judgment motion.[1] Plaintiff failed to submit the mandatory response to Defendants' statement of facts. *See* Local Civil Rule 56.1(b) (requiring "a correspondingly numbered paragraph responding to each numbered paragraph in the statement of the moving party" to be filed in opposition to a motion for summary judgment). Without such a corresponding statement, all assertions in Defendants' Rule

---
[1] Defendants' Local Rule 56.1 Statement of Undisputed Facts ("Def. R.56.1"), Docket Entry 18. The Davis deposition is Exhibit D, Docket Entry 17. Defendants' other exhibits can also be found at Docket Entry 17.

56.1 submission may be deemed admitted. *See* Rule 56.1(c).[2] Nonetheless, I have not merely relied on the assertions in Defendants' statement of facts but have also reviewed the underlying evidence cited in support of them.

On September 22, 2007, Defendants' car struck the front driver's side of Plaintiff's vehicle as Plaintiff approached an intersection in Staten Island, New York. Def. R.56.1 ¶¶ 16, 18; Davis Dep. at 47-49. Following the accident, Plaintiff was taken by ambulance to the emergency room complaining of headaches and injuries to her neck, right knee, pelvis and left shoulder. Def. R.56.1 ¶ 22; Davis Dep. at 106-08. During her emergency room visit, Plaintiff was diagnosed with cervical strain, contusions of the right hip and knee and a right ankle sprain. Def. R.56.1 ¶ 33; Def. Ex. H. X-rays were taken at that time of Plaintiff's chest, cervical spine, and right hip, leg, knee and ankle, but no fracture or other abnormality was found. *Id.*, and especially at Docket Entry 17-16 at 19-20.

It appears from Plaintiff's medical records that she subsequently visited a chiropractor three times between September 25, 2007 and July 31, 2008. *See* Docket Entry 22-5. Plaintiff also had seven visits with a physiatrist between September 28, 2007 and August 11, 2008 and six visits with an orthopedist between October 8, 2007 and July 29, 2008. *See* Docket Entries 22-3, 22-4, 22-5, 22-6, 22-7.[3] Following the accident, Plaintiff also missed two days of work but subsequently returned to her regular work schedule, with the exception of some half work days she took off to attend her physical therapy sessions. Def. R.56.1 ¶ 28; Davis Dep. at 147, 148-49.

---

[2] Plaintiff's failure to comply with Local Civil Rule 56.1 is particularly striking because Defendants' submission of a Rule 56.1 statement should have been sufficient to alert Plaintiff's counsel to the local rules' requirements.
[3] There are also records of additional tests performed around these dates. *See, e.g.*, Docket Entry 22-4 at 28-41 (detailing results of tests performed on Feb. 15, 2008).

Plaintiff sustained other injuries both prior and subsequent to the September 22, 2007 accident. Plaintiff was injured in an earlier car accident around 1995, hurting her neck, right knee, lower back and other areas of her back, and received treatment from several doctors for these injuries. Def. R.56.1 ¶ 4; Davis Dep. at 12-14.[4] As a result of that accident, Plaintiff required surgery on her right knee. Def. R.56.1 ¶ 5; Davis Dep. at 84. Plaintiff continued to be treated for injuries to her back, neck and right knee from the 1995 accident through 1996 or 1997. Def. R.56.1 ¶ 11; Davis Dep. at 90. Plaintiff then slipped on ice and fell down several stairs in December, 1998, injuring her coccyx and her hips; after this accident, she required an MRI, X-Rays (showing sciatica in the hip) and treatment. Def. R. 56.1 ¶ 14; Davis Dep. at 91-94. In April, 2005, Plaintiff visited her doctor complaining of neck, back, foot, ankle, calf, and hand pain; regarding her back and ankle pain, her doctor noted a "spasm in the paraspinal lumbrosacral musculature" and limited movement in her right ankle. Def. R.56.1 ¶ 42; Def. Ex. M. Shortly before the subject accident, in January of 2007, Plaintiff returned to her physician complaining of pain and swelling in her right leg. Def. R.56.1 ¶ 10; Davis Dep. at 89.

Finally, Plaintiff was involved in a subsequent car accident on December 31, 2008. Def. R.56.1 ¶ 34; Def. Ex. H. Plaintiff was taken to the hospital by ambulance after this accident. Def. Ex. H.[5] She complained of neck pain but said that she did not have any other pain. Def. R. 56.1 ¶ 34; Def. Ex. H. The emergency room physician diagnosed muscle strain. Def. Ex. H.

The parties' medical experts differ about whether Plaintiff's injuries were related to the September 22, 2007 accident and whether they constitute serious injury under the statute. Plaintiff's expert, Dr. Vilaire, examined Plaintiff on September 31, 2009, and again on January

---

[4] Defendants' Rule 56.1 Statement is unclear as to whether there were two prior car accidents in 1995, but examination of the transcript of Defendants' deposition of Plaintiff suggests that there was a single car accident that year. *See* Davis Dep. at 11-12, 85.
[5] Copies of Plaintiff's medical records from this accident are difficult to read.

24, 2011.  *See* Vilaire Aff.;[6] Docket Entry 22-5 at 26-31; Docket Entry 22-6 at 24-26.  Other doctors in the same medical practice saw Plaintiff on September 25, 2007 and other occasions.  Docket Entry 22-3 at 1-3, Docket Entry 22-4.

Dr. Vilaire found that Plaintiff's range of motion in her spine, right shoulder and right knee were limited.  *See* Vilaire Aff. at 3-6.  Based upon this finding, her examinations of Plaintiff and a review of Plaintiff's other treatment after the accident, Dr. Vilaire opined to "a reasonable degree of chiropractic certainty" that Plaintiff "suffered a permanent partial disability causally related to the accident of September 22, 2007."  *Id.* at 9.  Dr. Vilaire expanded upon the causal link between Plaintiff's injuries and the accident by saying, "I do not believe the patient's injuries, symptoms and disabilities are a result of any pre-existing or degenerative disease because the patient had no prior symptoms or related disabilities prior to the automobile accident of September 22, 2007."  *Id.*

Defendants' expert, Dr. Grelsamer, examined Plaintiff on September 15, 2010.  Grelsamer Aff. ¶ 4, Def. Ex. S.  In addition, he reviewed Plaintiff's medical records related to the accident and those from before the accident in question.  *Id.* ¶¶ 2, 3.  In contrast to Plaintiff's expert, Dr. Grelsamer found "with a reasonable degree of medical certainty that plaintiff did *not* sustain a 'serious injury,' as defined by New York insurance Law § 5102(d), as a result of the automobile accident of September 22, 2007."  *Id.* ¶ 11 (emphasis in original).  He further determined, upon reviewing Plaintiff's medical records, that injuries to her knee, neck, back, spine, and shoulder were "*not* causally related to the subject motor vehicle accident as they are "degenerative" in nature and existed *prior* to the subject accident."  *Id.* ¶ 20 (emphasis in original).

---

[6] The affidavit of Dr. Simone Vilaire can be found at Docket Entry 22-2.

## LEGAL BACKGROUND

### a. *Summary judgment standard*

A party is entitled to summary judgment where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). An issue of fact is material if it "might affect the outcome of the suit under the governing law," and a dispute about that fact is genuine "if the evidence [supporting it] is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986) (internal citation omitted). In reaching a summary judgment determination, the court must resolve ambiguities and draw reasonable inferences in favor of the nonmoving party. *Coach Leatherware Co. v. AnnTaylor, Inc.*, 933 F.2d 162, 167 (2d Cir. 1991). The moving party bears the initial burden of establishing that there are no genuine issues of material fact; once he does so, the non-moving party may defeat summary judgment only by producing evidence of specific facts that raise a genuine issue for trial. *Anderson*, 477 U.S. at 256; *Samuels v. Mockry*, 77 F.3d 34, 36 (2d Cir. 1996). Mere conclusory allegations, however, are insufficient, and "[t]here must be more than a 'scintilla of evidence'" to defeat a motion for summary judgment. *Del. & Hudson Ry. Co. v. Consol. Rail Corp.*, 902 F.2d 174, 178 (2d Cir. 1990) (quoting *Anderson*, 477 U.S. at 252).

### b. *Serious injury under New York Insurance Law*

New York Insurance Law § 5104(a) allows for recovery of non-economic loss caused by an automobile accident only where the plaintiff has suffered serious injury. Section 5102(d) of the law in turn defines serious injury in relevant part as:

> [P]ermanent consequential limitation of use of a body organ or member; significant limitation of use of a body function or system; or a medically determined injury or impairment of a non-permanent nature which prevents the injured person from performing substantially all of the material acts which

5

> constitute such person's usual and customary daily activities for not less than ninety days during the one hundred eighty days immediately following the occurrence of the injury or impairment.

Plaintiff appears to argue that her injuries fall into the category of either a "permanent consequential limitation of use of a body organ or member" or a "significant limitation of use of a body function or system" under § 5102(d). *See* Compl., Docket Entry 1 (not alleging that any specific provision of § 5102(d) applies); Riso Affirm. ¶ 17 (noting Plaintiff's physician's findings of "specific, significant permanent limitations and restrictions of motion" and making no specific reference to Plaintiff being unable to perform the acts which constitute her usual daily activities for 90 of the 180 days after the accident); Def. R.56.1 ¶ 28 (pointing out that Plaintiff returned to work two days after her accident).[7]

As Defendants have moved for summary judgment, they must first make a *prima facie* showing that Plaintiff did not sustain a serious injury; the plaintiff then has the burden to defeat that showing. *Morrone v. McJunkin*, 1998 WL 872419, at *2 (S.D.N.Y. 1998) (citing *Gaddy v. Eyler*, 79 N.Y.2d 955, 956 (1992) (applying New York law)); *see also Winegrad v. N.Y. Univ. Med. Ctr.*, 64 N.Y.2d 851, 853 (1985). This *prima facie* showing is satisfied when an examining physician affirms that no serious injury exists. *See, e.g.*, *Toure v. Avis Rent a Car Sys.*, 98 N.Y.2d 345, 352 (2002); *Gaddy*, 79 N.Y.2d at 956-57. The physician's report in support of summary judgment must, however, be in "admissible form, i.e., affidavits or affirmations, and not unsworn reports, in order to make a 'prima facie showing of entitlement to judgment as a matter of law.'" *Pagano v. Kingsbury*, 182 A.D.2d 268, 270 (2d Dep't 1992) (quoting *Winegrad*, 64 N.Y.2d at 853).

---

[7] "Riso Affirm." refers to the Affirmation in Opposition to the Motion for Summary Judgment of John Riso, Plaintiff's attorney, Docket Entry 22-1.

## DISCUSSION

Defendants have satisfied their burden of presenting a *prima facie* case by offering Dr. Grelsamer's sworn statement, made after examining Ms. Davis and her medical records, that Plaintiff did not sustain any serious injuries. *See* Grelsamer Aff. ¶ 4.[8] The burden thus falls on Plaintiff to come forward with evidence that raises a genuine issue of material fact. Here, Plaintiff has submitted an affidavit from her chiropractor, Dr. Vilaire, attesting to the severity of the injuries she sustained as a result of the car accident. Plaintiff's submission also includes her medical records from the date of the accident until September, 2009, as well as the record of her expert chiropractor's examination on January 24, 2011. *See* Docket Entries 22-3, 22-4, 22-5, 22-6, 22-7. In her own affirmation, Plaintiff asserts that she did not "experience any pain or limitations in [her] cervical and lumbar spine, left shoulder and right knee" before the accident. Pl. Aff. ¶ 4.[9] She also describes pain and limitations to her movement and daily activities, including difficulty "standing, sitting, bending, stooping, squatting, crawling, walking, climbing stairs, sleeping, reaching, standing from a seated position, lifting, pushing, reaching, getting dressed, washing dishes, making the beds, vacuuming and getting out of bed." *Id.* ¶ 5.

In reaching her conclusion that Plaintiff suffered a permanent partial disability, Dr. Vilaire relies largely upon limitations in range of motion measured on July 31, 2009 and January 24, 2011. Vilaire Aff. ¶¶ 5-9. The affirmation submitted by Plaintiff's attorney similarly relies primarily on range of motion studies to support Plaintiff's claim of serious injury. Riso Aff. ¶¶ 6-14. In general, the type of limitations to one's movement that Plaintiff's expert measured, discussed *supra*, would raise a genuine issue of material fact requiring a trial. *See, e.g.*, *Toure*,

---

[8] As Defendants correctly point out, Plaintiff's contention that Defendants must examine the plaintiff within 90 days of the accident in order to bring a summary judgment motion does not appear to have merit, and the cases Plaintiff cites do not support this proposition. *See* Riso Affirm. at 6-7; Reply at 10, Docket Entry 24.
[9] Plaintiff's affidavit is attached to the Riso affirmation at Docket Entry 22-1.

98 N.Y.2d at 350 (finding that "[i]n order to prove the extent or degree of physical limitation, an expert's designation of a numeric percentage of a plaintiff's loss of range of motion can be used to substantiate a claim of serious injury") (internal citations omitted); *Mendola v. Demetres*, 622 N.Y.S.2d 309, 310 (2d Dep't 1995) (finding that plaintiff's showing that his limitation of motion was "supported…by specific measurements concerning [the] limitations" was sufficient to defeat summary judgment) (internal citations omitted). However, courts have typically held that limitations in range of motion that are less than 20 percent are not sufficiently significant to constitute a serious injury. *Hodder v. United States*, 328 F. Supp. 2d 335, 356 (E.D.N.Y. 2004) (pointing out that, "[w]hile there is no set percentage for determining whether a limitation in range of motion is sufficient to establish 'serious injury,' the cases have generally found that a limitation of twenty percent or more is significant for summary judgment purposes. . . [and that] less than 20% limitation has been found insufficient") (collecting cases). *See also Tsveitel v. Geoghegan*, 2009 WL 2182379 at *8 (E.D.N.Y. July 21, 2009).

Here, many of the measurements included in Dr. Vilaire's affidavit reflect limitations of less than 20 percent. This is particularly so with respect to the measurements made on January 24, 2011, when the only range of motion limitations exceeding 20 percent were measured with respect to plaintiff's right knee and the flexion of the cervical and lumbosacral regions of her spine. The measurement with respect to plaintiff's right knee is irrelevant, because the tests run on July 31, 2009 – eighteen months earlier and closer to the accident date – showed no significant impairment to plaintiff's right knee. Vilaire Aff. ¶ 9 (indicating that plaintiff's right knee range of motion was measured at 143 degrees on July 31, 2009 and 111 degrees on January

24, 2009 and that a normal finding would be 150 degrees).[10] While the July 31, 2009 findings were made closer in time to the accident at issue, the January 24, 2011 findings are highly relevant because "any assessment of the 'significance' of a bodily limitation necessarily requires consideration not only of the extent or degree of limitation, but of its duration as well. . . there can be no doubt that if a bodily limitation is substantial in degree yet only fleeting in duration, it should not qualify as a 'serious injury' under the statute. *Partlow v. Meehan*, 548 N.Y.S.2d 239, 240 (2d Dep't 1989). *See also Hodder,* 328 F. Supp. 2d at 349 (holding that, to establish a claim of significant limitation of use, "there must be a 'recent examination' of plaintiff on which the objective medical findings have been made") (internal citations omitted).

Moreover, to the extent the limitations on range of motion reported by Dr. Vilaire are significant, Dr. Vilaire's findings are not sufficient to defeat summary judgment because they do not take into account Plaintiff's injuries prior and subsequent to the accident. As noted above, Plaintiff was injured in an automobile accident in 1995 and required surgery on her right knee, as well as extensive treatment for neck and back injuries. Plaintiff fell in 1998 and injured herself again. Plaintiff continued to receive treatment for pain intermittently up through January of 2007, just nine months before the accident at issue. In addition, and of particular significance here, Plaintiff was involved in yet another automobile accident on December 31, 2008, before any of the range of motion tests she relies on here were conducted.

Affidavits in opposition to a motion of summary judgment that do not address the effects of other accidents or injuries have been held to not raise a triable issue of fact in response to the showing made by the moving party. *See, e.g.*, *Depena v. Sylla*, 880 N.Y.S.2d 641, 641-42 (1st

---

[10] The Vilaire affidavit was not prepared with great care. The measurements of plaintiff's knee, for example, are described as "[c]omputerized shoulder range of motion" tests, Vilaire Aff. ¶ 9, and normal cervical spine flexion is reported to be 50+ degrees on one page and 65+ degrees on another, *id.* ¶ 5. The July 31, 2009 finding of virtually normal right knee range of motion reported in the affidavit, however, is not a typographical error, as it is consistent with the underlying medical records submitted as Exhibit L to Defendants' motion, Docket Entry 17-21 at 10.

Dep't 2009) (upholding summary judgment where Plaintiff's physician did not take into account previous injuries found to be degenerative by another doctor following the accident and did not support his finding that the injuries were attributable to the accident); *Cervino v. Gladysz-Steliga*, 829 N.Y.S.2d 169 (2d Dep't 2007) (same); *Bennett v. Genas*, 813 N.Y.S.2d 446 (2d Dep't 2006) (same); *Moore v. Sarwar*, 816 N.Y.S.2d 503, 504 (2d Dep't 2006) (affirming summary judgment because the examining chiropractor both based his opinion on unsworn reports and he "failed to acknowledge or account for a prior accident" with the result that "the chiropractor's findings that the injuries…were caused by the subject accident were speculative"); *Mooney v. Edwards*, 784 N.Y.S.2d 599, 599-600 (2d Dep't 2004) (affirming a grant of summary judgment below where there was no explanation of the gap in the plaintiff's medical treatment and where "it was…clear that the plaintiff's examining physician was completely unaware" of subsequent accidents); *Narducci v. McRae*, 748 N.Y.S.2d 764, 765 (2d Dep't 2002) (finding that no triable issue of fact was raised as to whether the subject accident caused the injury where plaintiff "alleged the existence of an injury [to the same body part]…in a prior action, 'and the plaintiff's expert failed to indicate an awareness of the condition of that [body part] just before the subject accident'" (quoting *Kallicharan v. Sooknanan*, 723 N.Y.S.2d 376, 377 (2d Dep't 2001)). As noted above, Plaintiff's expert's affidavit not only fails to mention the accidents and injuries that occurred before and after the accident in question but affirmatively states that Plaintiff "had no prior symptoms or related disabilities." *See* Vilaire Aff. at 9. Thus, Dr. Vilaire's affidavit is insufficient to raise a genuine issue of material fact with respect to whether any limitations Plaintiff may have were proximately caused by the accident in issue.[11]

---

[11] Defendants also raise other arguments which are less persuasive and, in any event, need not be reached. Defendants' contention that Plaintiff's physician relies impermissibly on unsworn reports, for example, appears to be without merit. *See* Reply at 1-2, Docket Entry 24. A physician's affidavit, supported by examinations of the patient and the relevant medical records, has been found to raise issues of fact sufficient to defeat summary

10

Although Plaintiff submitted an affidavit stating that she has experienced pain and that her movement has been restricted since the accident occurred, her claims do not overcome the deficiencies in her case discussed above. Where a plaintiff's medical evidence in opposition to summary judgment is not otherwise sufficient, the plaintiff's own affidavit will generally not create a triable issue of fact. *See Depena*, 880 N.Y.S.2d at 643 (finding that the plaintiff's own claims about her impairments were "not supported by competent medical evidence" where her doctor had not taken account of her prior injury and thus those claims were not sufficient to defeat a summary judgment motion); *see also Toure*, 98 N.Y.2d at 350 (noting that "subjective complaints alone" of an injury are insufficient to meet the serious injury threshold) (citing *Gaddy*, 79 N.Y.2d at 957-58 and *Scheer v. Koubek*, 70 N.Y.2d 678, 679 (1987)); *Catalano v. Kopmann*, 900 N.Y.S.2d 759 (2d Dep't 2010) (finding that the plaintiff's affidavit did not constitute objective evidence of injury and therefore did not defeat a summary judgment motion given her physician's failure to document a serious injury) (citing *Luizzi-Schwenk v. Singh*, 872 N.Y.S.2d 176 (2d Dep't 2009)). Plaintiff's claims regarding her own impairment thus do not raise a material question of fact sufficient to defeat summary judgment.

---

judgment. *See Addison v. N.Y. City Transit Auth.*, 618 N.Y.S.2d 526, 526 (1st Dep't 1994) (finding that a physician's affirmation of an injury "is the equivalent of a 'sworn' statement" and that this affirmation, coupled with the doctor's "own examination of the patient, as well as by reference to an objective diagnostic test" administered by another doctor and included elsewhere in the record was sufficient to defeat a summary judgment motion); *see also* Fed. R. Evid. 703 (providing that facts or data relied on by an expert need not be admissible in evidence "[i]f of a type reasonably relied upon by experts in the particular field"). Given that Plaintiff's physician examined Plaintiff personally and completed a sworn affidavit, Dr. Vilaire's findings are comparable to those that New York courts have found to be admissible evidence creating a genuine issue of material fact for trial.

Defendants further contend that Plaintiff's deposition testimony is inconsistent with her affidavit. *See* Reply at 3-4. New York courts have found that, where such inconsistencies exist, and the plaintiff's affidavit is "tailored to avoid the consequences of [the earlier] testimony," that affidavit does not raise a genuine issue of material fact. *See Sougstad v. Meyer*, 835 N.Y.S.2d 722, 723 (2d Dep't 2007); *Blackmon v. Dinstuhl*, 810 N.Y.S.2d 79, 80 (1st Dep't 2006). Defendants' claims of inconsistency, however, appear to be somewhat overstated; while Plaintiff's affidavit gives a more comprehensive list of her impairments than her deposition does, she did state in her deposition that similar categories of activities were difficult for her. *Compare* Pl. Aff. ¶¶ 5-9 (discussed *supra*) *with* Davis Dep. at 160-61 (discussing Plaintiff's inability to clean on her knees, among other activities, as well as her difficulty walking and sitting and standing for long periods).

11

## CONCLUSION

For the reasons stated above, Defendants' motion for summary judgment is granted. The Clerk of the Court is directed to enter judgment accordingly and to close the case.

SO ORDERED.

Dated: Brooklyn, New York
October 19, 2011

/s/
STEVEN M. GOLD
United States Magistrate Judge

U:\rmk 2011-12\Davis v Ogando\Davis v Ogando M&O final.docx